KENNEDY
v.
STRONG.

**KENNEDY,** *survivor of* **KENNEDY AND STUYLEY,** *against* **STRONG.**

*In an action of
trover for the
conversion of
goods which the
defendant had
received from
the plaintiff, as
his factor, the
defendant is
precluded by his
admissions made
subsequently to
the conversion
of property, in
the plaintiff,
from showing
that the plain-
tiff's property
in the goods had
been devested
previously to
his receiving
them.
But had there
been no such ad-
mission, the de-
fendant might
have set up pro
perty in a third
person.
A discharge un-
der the insol-
vent act of 1811,
is no bar to an
action of trover.
The measure
of damages in
trover is the
value of the
goods at the
time and place
of conversion.
If a factor
pledge the goods
of his principal
for his own debt,
it is a conver-
sion.*

THIS was an action of trover for one bale and four cases of merchandise. The cause was tried before Mr. Justice *Spencer*, at the *New-York* sittings, in *November*, 1815.

The goods in question were shipped at *Liverpool*, in *March*, on board the ship *Oliver Ellsworth*, belonging to *Strong & Davis*, of which firm the defendant was a member, for *New-York*. The goods were to be delivered, pursuant to the bill of lading, to the plaintiff and his deceased partner, *Stuyley*. The vessel arrived off the harbour of *New York* in the month of *May*, 1811, but did not enter the waters of the *United States*, and the master being informed that the non-intercourse with *Great Britain* was again in force, kept her lying off and on the harbour, for some days, until instructions were given by the owners to proceed to *Havanna*; and the defendant went on board of the vessel, as owner and supercargo, and sailed in her to the *Havanna*, having been intrusted by the plaintiff and his partner with the care of their goods, and directed to sell them at what price they would command. The vessel, with the goods on board, arrived at the *Havanna*, in *June*, 1811. The plaintiff read in evidence an affidavit made by the defendant, on the 13th *July*, 1811, after his return from the *Havanna* to *New-York*, before a notary public, in which he stated that he deposited the goods in question, for sale, in the hands of *Vincent Gray*, merchant, at the *Havanna*; that the goods were the property of *George Stuyley & Co.*, and that the deponent never had any right or property in them whatever, except as agent or consignee, and which was conferred on him as one of the firm of *Strong & Davis*, by virtue of a letter from *Stuyley & Co.*; that he never sold the goods by virtue of the power contained in that letter, but that an attachment having been issued against the property of *Strong & Davis*, for a debt contracted by them in the city of *New-York*, and the deponent having notice thereof, *Vincent Gray* became security for the payment of the amount of the attachment, and that the deponent left the goods in his hands and returned to *New York*.

At the time of making this affidavit, the defendant said that

he had left the goods in the hands of *Gray*, to indemnify him against his liability as security on that attachment. The plaintiff proved that the invoice price of the goods, with interest, amounted to 3,942 dollars and 9 cents.

ALBANY,<br>January, 1817.

KENNEDY<br>v.<br>STRONG.

The defendant then moved for a nonsuit, on the ground that the plaintiff had no property in the goods, as they were forfeited to the *United States*, and because he had not proved the value of the merchandise at the *Havanna* at the time of the conversion: but the motion was overruled, and the defendant gave evidence of the value of goods, generally, at the *Havanna*, of a similar kind with the goods converted, about the time of the conversion, but gave no evidence of the price at which these goods were sold, nor did it appear that they ever had been sold. The defendant offered in evidence his discharge under the insolvent act of 1811, but it was rejected by the judge: And the jury, by consent of parties, found a verdict for the plaintiff for 3,942 dollars and 9 cents, and also found the value of the goods at the *Havanna*, at the time of the conversion, with interest, to be 1,972 dollars. The verdict was taken, subject to the opinion of the court, whether the plaintiff was at all entitled to recover, and for which of these two sums the verdict should be entered.

*Slosson*, for the plaintiff. The shipment of the goods, with intention to import them into the *United States*, did not, without any seizure or suit, devest the property by forfeiture.[*]

[Thompson, Ch. J. That point has been settled in this court,[†] and in the supreme court of the *United States*.[‡] The forfeiture takes place on the commission of the act prohibited, and by the forfeiture, the property is immediately devested out of the owner, before any seizure or suit.]

* 1 <em>Gallis' Rep.</em><br>198. 314. 472.<br>544, 545. 1 <em>Term Rep.</em> 260. 5 <em>Term Rep.</em> 112<br>† <em>Fontaine</em> v. <em>Phœnix Ins. Co.</em> 11 <em>Johns. Rep.</em> 293.<br>‡ 3 <em>Cranch's Rep.</em> 337. 356. n.

But we contend that the defendant cannot make the objection here. If a prior forfeiture had been incurred it might have been remitted by the secretary of the treasury; or he may have thought proper not to enforce the act of congress. If the *United States* leave goods in the hands of the owner, and he delivers them to a bailee to do certain acts relative to them, the bailee cannot object that his bailor had no property in the goods. Possession is *prima facie* evidence of ownership, and is sufficient against all the world, except the true owner, and

ALBANY,
January, 1817.

KENNEDY
v.
STRONG.

that, in this case, would be the *United States.* The bailment was a lawful act, and the bailee is liable under his implied contract arising from the bailment. He cannot set up as a defence that the property belonged to a third person; nay, the third person, or the *United States,* makes no claim of property. Nor could such claim be made; for the property has never been within the jurisdiction of the *United States;* and the act authorizing a seizure has expired, so that if the property were now here, it could not be touched by the *United States.** Besides, the time limited by the act itself, for making seizures has expired, and no right or power of seizure can be exercised. The case of *Tenant* v. *Elliott,*† fully establishes the principle for which we contend. It was held, in that case, that if *A.* has received money to the use of *B.,* on an illegal contract between *B.* and *C.,* he shall not be allowed to set up the illegality of the contract as a defence in an action brought against him for the money by *B.*

As to the damages, we claim the amount of the invoice price of the goods, with interest. In cases of insurance that is the measure of damages. So, in cases of embezzlement of goods by the master of a vessel, the owner of the goods is entitled to the value at the port of destination, and they would have been worth the invoice price in *New-York.*

*Colden* and *Wells,* contra. The plaintiff has neither the right of property, nor the right of possession. By the forfeiture under the non-intercourse act, it is admitted, that the title was devested.* Is the plaintiff a special bailee, having a right of possession? That is not pretended: his right of possession is founded upon ownership. But it is supposed, that by a delivery of the property to the defendant, a new relation was created between the parties, which gave the plaintiff the rights of an owner. The plaintiff having violated the non-intercourse act, his property, was *eo instanti,* gone; and in *trover,* the defendant may set up a title paramount to that of the plaintiff. Being *in delicto,* he can never take advantage of any supposed right between him and the defendant to maintain an action. In seeking to recover, he shows that he has forfeited all right to the goods; and without having a right, he cannot support an action. The *United States* may bring *detinue* before seizure.§

If the plaintiff is entitled to recover, it can be only for the value of the goods at the time of the conversion.

* 6 *Cranch.* 329.
*The Rachell* v.
*The Uni. States.*

† 1 *Bos. & Pull.*
3.

‡ 11 *Johns. Rep.*
393.

§ *Roberts* v.
*Withered,* 5
*Mod.* 193. S. C.
1 *Salk.* 213.
*Comb* 361. 5
*Term Rep.* 112.

*Slosson*, in reply. By the late treaty of peace, all the acts of congress, relative to non-intercourse, are wholly abrogated. Although the property of the plaintiff had become devested by the forfeiture, yet he retained the actual possession, and there is no other person asserting any claim or title. He had, therefore, a species of property; for the violation of the act not being wilful on his part, he might reasonably expect that the *United States* would remit the forfeiture, or never disturb his possession. Being in the actual possession, he entered into a lawful contract with the defendant; on what ground, then, can the defendant set up a paramount title, unless it be that he is liable to a third person who has a superior title? But there is now no third person who can have any superior claim or title.

Thompson, Ch. J., delivered the opinion of the court. The questions are, 1. Whether the plaintiff had any property in the merchandise, it being shipped contrary to the non-intercourse act; and, 2. As to the rule of damages, if the plaintiff is entitled to recover any thing.

1. I am inclined to think the defendant is precluded by his admissions in his affidavit, and otherwise, from denying the interest of the plaintiff in the goods in question. Those admissions were made after the property of the plaintiff must have been devested by the forfeiture, if ever it was so; and the property was taken into possession by the defendant as the goods of the plaintiff; and I do not see why the defendant ought not to be estopped, by such admissions, from denying the plaintiff's title, as much in a chattel as in lands. Although the property might once have been devested by the forfeiture, who can say but the plaintiff had, by some means, reinvested himself with the right, or procured a dispensation of the forfeiture? It would be unjust to permit the defendant to set up a title in a third person, after having acknowledged the plaintiff's right, and received the goods as his. It would operate as a surprise upon the owners of goods to permit their agents or factors to set up such a defence. In the case of *Fontaine* v. *The Phœnix Ins. Co.*, (11 *Johns. Rep.* 300,) there were no acts of the defendants by which they were precluded from setting up property in a third person; and if, in this case, the defendant had not, by his admissions, fully recognized the plaintiff as owner, I see no objections against his setting up the

forfeiture. ' In *trover*, the defendant may show property in a third person.

2. The discharge of the defendant under the insolvent act of 1811 did not reach this demand, it being founded on a *tort*.

3. The rule of damages, I think, ought to be the value of the goods at the *Havanna* at the time of the conversion. The letter of instructions did not limit the defendant as to price. He was to sell, at all events, for what they would command. His pledging the goods was the wrongful act which constituted the conversion; and it is a general rule in *trover* that the measure of damages is the value of the property at the time of the conversion. The plaintiff is, accordingly, entitled to judgment for 1,972 dollars.

Judgment for the plaintiff. ·