BELL and others *against* PALMER and HAMILTON.

A consignee,
or factor, ma-
king advances
on the goods
of his consign-
or, or princi-
pal, to an a-
mount even
beyond their
value, is yet
bound to obey
the instruc-
tions of the
latter as to the
time of sale,
tho' there be
no agreement
to that effect.
And if, being
instructed to sell immediately, he refuse the first offer, in expectation of a more favorable
market ; and afterwards sell at less than the offer ; he is liable, though he act in perfect
good faith.

ASSUMPSIT, tried at the *New York* circuit, *December*
3, 1823, before EDWARDS, C. Judge, when the following
facts appeared :

The defendants, at *New-York*, having on hand a quan-
tity of cocoa consigned to them by *D'Arcy* and *Dedier*,
of *Baltimore*, at the request of *Darby*, one of the plain-
tiffs, consigned to their house of trade at *Leghorn* (*Italy*)
a part of this cocoa in two parcels on an advance by the
plaintiffs of £2100, sterling ; the defendants agreeing to
be personally liable for the advance.   The consignment to
the plaintiffs was by the ship *Minerva Smith*, which ar-

rived at *Leghorn September* 1, 1819. The consignment was accompanied with the defendants' letter of instructions as to the principal parcel, dated the 23d of *June* previous, in which they said, "we enclose invoice and bill of lading for 910 bags of *Guayaquil* cocoa, of a very superior quality; amounting per invoice to $13,660. It is our wish that *an immediate sale* be made of this shipment on its arrival; and Mr. *Darby* gives us assurances of a favorable result, judging from quotations of the article at your port." A subsequent letter as to the smaller parcel referred to the former letter for instructions. The article was ready for sale at *Leghorn* on the 20th of *September.* Between that day and the 28th of the same month, the plaintiffs had an offer of 12 $\frac{3}{4}$ pesos per cwt. which they declined, on the ground that it would not cover anticipations, freight, insurance and charges; and it was finally sold, not till *June,* 1820, at $11, per cwt. In the mean time, they had made various attempts to sell at a greater advantage. On the 9th of *August,* 1820, the plaintiffs sent to the defendants their account of sales and account current, shewing a balance in their favor of $2565, 52, for which this action was brought. The defendants refused to pay that sum; but on the 1st of *April,* 1822, they paid the plaintiffs $600,26, which would be 20 cents more than the balance due the plaintiffs, if they had taken the offer of 12 $\frac{3}{4}$ pesos.

Evidence was given at the trial upon the question whether the plaintiffs had conformed to the spirit of their instructions; and whether the defendants had acquiesced in their proceedings. But it is not necessary to state this; as the case here turned on the charge of the judge upon the effect of the instructions.

In his charge, he stated the rule of law to be, that (unless a special agreement exists) consignors, by receiving an advance upon property shipped, subject it to the power of the consignees, and part with their right to control the disposition of it; so far as to enable the consignees to hold it a reasonable time to consult the market, and to adopt

such reasonable measures, as may be necessary to enable them to reimburse themselves. The letter of instructions he considered immaterial; for if there was no special agreement, the instructions could be of no avail against the lien of the plaintiffs.

The jury finding difficulty on the question of the agreement, the judge further charged them, that in order to hold the plaintiffs liable, they ought to find, that there was an express agreement, that the goods should be sold immediately on their arrival. That if there was not an agreement to that effect, the letters of instruction were of no importance; and ought to be laid out of the question; and that it lay with the defendants to establish the agreement.

The jury found for the plaintiffs $2514,02.

*J. Duer*, now moved for a new trial, on this ground, (among others:) that the plaintiffs were bound by the defendants' instructions, to sell the cocoa immediately on its arrival; and the judge erred in charging the jury that the letters of instruction were of no importance, and that there must have been an express agreement. (1 *John. Cas.* 436, 437, 462 to 467, *note.* 4 *John. Rep.* 103. 13 *id.* 332.) He agreed that the plaintiffs had acted in good faith; but this was not enough. They should have accepted the first offer of 12 ¾ pesos per cwt. He denied that there was any authority for requiring a special agreement; and insisted that the right and duty of the consignees were not varied by the advance. True, he said, the consignee has a lien, in such a case; but he has no right to sell in virtue of his lien merely. Before that can be done, the pledgor must be formally called on to redeem.

The instructions in this case are sufficiently explicit. A request by one having a right to command, is always construed imperatively. No discretion was allowed; and the parties must have so understood the letter.

It was a condition that we should not be liable unless there was an immediate sale. This should have been strictly per-

formed. Where one is under an obligation to sell, if he lets an opportunity to sell to advantage pass, and afterwards sells at a less advantage, he must abide the loss. (*Curry* v. *Edensor*, 3 *T. R.* 524.)

*P. W. Radcliff* and *T. A. Emmet*, contra.   The letters of the defendants do not import an absolute order to sell immediately, and, at all events, whatever might be the state of the market. They must be understood as meaning a sale which should not be injurious to the consignor.   If otherwise, the order was not obligatory.   It was not competent for the defendants, after receiving an advance on the credit of the cocoa, to compel a sale which would not cover advances and charges, unless there was a special agreement at the time, authorizing such an order.   Otherwise the consignor may defeat the object of the consignment, which is security for the advance.   Whether there was such an agreement, is a question of fact ; and was properly put to the jury.

It is conceded that we acted in good faith.   This was sufficient under the circumstances.   (3 *Cowen*, 281.) We were not bound literally to follow instructions, at whatever sacrifice.   (1 *John. Cas.* 174.  3 *id.* 311.   4 *Bin.* 361.  1 *Yeates*, 486.  *id.* 409.  1 *Liv. on Agency*, 369.)   If we had sold, and the market had afterwards risen, the case would have been stronger against us.

The lien gives a right to hold the goods, if not to sell them. There was no need of calling on the defendants to redeem. There was authority to sell, though not positive and effectual instructions to sell immediately.

All we contend for is, that the consignee should have a reasonable time to look to the market.

This is not the case of a will, in which we admit that the mere expression of a wish is to be construed imperatively.

But when one parts with an interest in property, he parts *pro tanto* with the control of it.   He cannot diminish its value by hastening the sale, whether it be the sole

UTICA,
Aug. 1826.

Bell
v.
Palmer.

security, or not. He can no more do this than a mortga-
gor of real estate, who is always bound personally.

The counsel also cited 2 *Gall.* 13.

*J. O. Hoffman,* in reply. The judge finally excluded
from the jury every thing except the question whether
there was an express agreement. He did not even leave
room for them to find an implied agreement. No authority
has been, or can be cited, shewing the necessity of any a-
greement, to secure the control of the consignors.

The lien was merely on the *proceeds* of the goods; not
on the *goods* themselves. These were to be sold; and
so both parties understood. The instructions of the prin-
cipal must be obeyed. The plaintiffs were the mere a-
gents or factors of the defendants. And the lien for ad-
vances was never held to give the factor a control beyond
what he would otherwise have. The principal may or-
der a sale when he pleases; and require his factor to rely
on his personal security for the balance of the advance,
if it exceeds the amount of sales. The consignee always
agrees to this. It is implied from the nature of the trans-
action.

In good sense, these instructions were to sell at the
market price on the first offer.

*Curia, per* SAVAGE, Ch. J. There is no dispute but the
advance on the goods exceeded their value; and the de-
fendants admit their liability to refund the difference be-
tween the money loaned, and the value of the cocoa at
12 $\frac{3}{4}$ pesos. But they contend that the plaintiffs, not hav-
ing taken that price when offered, and having subsequently
sold for eleven, must bear the loss. Whether the plaintiffs
were bound to have taken that offer, and to have sold im-
mediately on the arrival of the cocoa; or whether they
were justified in holding it longer, to try the market, is
the only question.

The judge at the trial charged the jury, that the letters
of instruction were to be laid out of the question, unless
there was an express agreement to sell immediately. In

UTICA,
Aug. 1826.

Bell
v.
Palmer.

this I apprehend there was an error. The plaintiffs, by their representative, *Darby*, had refused to purchase, but solicited the consignment of the cocoa. They received it as factors; and of course under the rights and duties which exist by law between principal and agent. The plaintiffs having advanced money upon the goods, gave them a lien for the mount of their advance; but I do not find any authority for saying that the lien thus created alters the rights of the parties in any respect, so far as relates to the duty of the factor in making sale of the goods. Nor is there any reason why it should. The principals are liable for the money advanced; and the goods being at their risk, are subject to their order and control, in every respect not inconsistent with the lien of the factor.

The factor's lien is upon the goods, and upon the proceeds. (*Cowp.* 256.) The most advantageous sale should be made; that the balance, if in favor of the principal, may be as large as possible; and, if against him, as small as possible. It is the duty of the factor to manage the affairs of his principal in the same manner, and with that care and diligence, which a prudent and discreet merchant would exercise in relation to his own affairs. But he must still obey his instructions; because it is the principal who bears the loss. The factor must, for that reason, be liable for negligence or for departure from instructions in the same manner as in ordinary consignments.

It was said by this court, in *Rundell* v. *Moore*, (3 *John. Cas.* 37,) that agents or factors who disobey their instructions through mistake or design, are undoubtedly responsible. In *Evans* v. *Potter*, (2 *Gall.* 13,) *Story*, justice, says, "a factor is bound to ordinary diligence in relation to the property confided to him. Where the orders leave the management of the property to his discretion, he is bound only to good faith and reasonable conduct." "If he can advantageously sell the property, and neglect so to do, he must answer in damages. But if the markets are low, or unusually crowded, if new and unexpected difficulties arise, he is not obliged to sell at all events, and under every disadvantage." The same doctrine of

the liability of the factor for ordinary negligence, is found in the treatises on agency, by *Paley* and *Livermore*, and cases cited by them. ( *See also* 1 *John. Cas.* 178, 9.) But the consignee must obey his instructions. If he sell under the given price, though from good motives, he is bound to make good the loss. ( *Guy* v. *Oakley*, (13 *John.* 333, 4.)

If the principal give orders to his factor, they must be pursued, or he becomes liable. If none are given, or they are not clear and explicit, the factor is allowed to use his best discretion according to the usage of trade. ( *Geyer* v. *Decker*, 1 *Yeates*, 487.) This case was cited to shew that orders to sell *on arrival*, were complied with, if a sale was made within six months. But the time was not made a point in the cause. The breach, it was contended, consisted in selling on credit, when the orders were for cash ; the language being to sell on arrival, and remit the produce by the same vessel, or any other vessel, to *Philadelphia*, in bank notes. The court held that was no direction to sell for cash only. They also say, there was strong proof of acquiescence.

The case of *Dusar* v. *Perit*, (4 *Bin.* 361,) maintains the proposition, that a departure from instructions, may be excused by an event not contemplated at the time the instructions were given. The supercargo, in that case, was compelled to go to the *Havanna* to repair his vessel, in consequence of an accident. He sold the vessel and part of the flour, at the limited price. The residue of the flour was sold at less than the price fixed by his instructions, in consequence of the arrival of other cargoes. The general principle, of the liability of agents in case of deviation from instructions, is not at all impugned by this case. *Yeates*, justice, says, "I think it a matter of great moment in commercial transactions, that agents should be strictly held to execute the orders of their principals ; but I do not think this such a case as demands the court's interposition in order to guard that principle."

In none of the cases cited, nor in any which I can find, is the distinction taken which was relied on by the judge :

to wit, that in cases where advances are made on goods consigned, the consignee is not bound to obey the instructions of the consignor.

The analogy between consignor and consignee, and mortgagor and mortgagee, does not strike me as very forcible, except it be that the mortgagee, in the act of foreclosing his mortgage by sale, resembles the consignee in selling goods, upon which he has made advances.    In such case, should the mortgagee refuse a higher price, and afterwards take less, ought he not to account to the mortgagee for the highest price offered ?

I do not wish, however, to be understood as now expressing an opinion upon what I conceive to be the question hereafter to be tried, to wit : whether the plaintiffs were guilty of negligence by disregarding their instructions.    That is a question of fact, which should have been submitted to the jury.

A new trial must be granted; the costs to abide the event.

New trial granted.