## Case No. 4,886.

### The FLORENZO.

[Blatchf. & H. 52.] [1]

District Court, S. D. New York. Feb. 6, 1828.

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

States. It claims a forfeiture of the vessel and of her equipments, for a violation of the act of congress ·of December 31, 1792 (1 Stat. 287), entitled "An act concerning the registering and recording of ships or vessels," the 7th section of which prescribes certain formalities in the transfer of American registered vessels to aliens, which are not now in question, and the 16th section of which makes any transfer to an alien, by way of trust or otherwise, without the formalities prescribed in the 7th ·section, a cause of forfeiture. The libel alleges a transfer of the vessel, in whole or in part, to one Pettit, an alien, in such manner as to cause her forfeiture within the meaning of the act.

Two claims are interposed: One on the part of Whitehead Cornell, who asserts that he acquired the vessel by a bona fide purchase of her on the 1st of September, 1827, from George Marsden, the then owner, and he produces a bill of sale in support of his title. Although the evidence is not in all respects free from doubt, yet I am satisfied the weight of it proves that Marsden was not at the time the owner of the brig in his own right, but that, being an American citizen, he took the nominal title in his name, to hold her in trust for Pettit, or for Arnold and Pettit, both of whom were then aliens. This brings the case within the words of the statute, and the vessel must be declared forfeited, so far as the claimant, Cornell, is concerned, unless he brings himself within the proviso to the 16th section of the act. It is plain, however, from the language of the proviso, that it applies only to the case of joint-owners of a vessel, one of whom admits an alien to an interest in the vessel, without the privity of his citizen co-owner. The substance of the provision is, that if it appears that the other part owner was ignorant' of the transfer to the alien, his share shall not be forfeited, but the residue only. He will not lose his interest in the vessel, by the misfeasance of his associates, to which he was not party or privy. Without this proviso, his interest would not be protected, because an absolute forfeiture of a vessel transfers the entire interest in her to the government, without regard to the claims of parties who did not participate in the cause of forfeiture. This is invariably so in respect to vessels confiscated for violations of the revenue laws.

Two things are necessary to protect the claimant under the proviso to the 16th section. First, he must be a part owner (The Margaret, 9 Wheat. [22 U. S.] 421), and, secondly, he must be such part owner at the time of the commission of the act which produces the forfeiture. But the claimant makes title to the whole vessel. He does not allege that he acquired a share in her, which the proviso might protect from the forfeiture incurred, because of the ownership of an alien in common with him, but he claims

Robert Tillotson, Dist. Atty., for the United States.
George Brinckerhoff, for Cornell.
Robert Sedgwick, for Candler.

BETTS, District Judge. There is no controversy concerning the first libel pending against this vessel, and the claim of the seamen and of the material man must be allowed.

The second libel is filed by the United

that he is the bona fide owner of the entire vessel. In the second place, he does not allege any interest in the vessel at the time of the commission of the act which produced the forfeiture. He acquired his alleged title subsequently. Clearly, then, he is not protected by the proviso to the 16th section, even if he had proved himself to have been a bona fide purchaser, without notice of any cause of forfeiture existing at the time of his purchase.

But there are forcible reasons to question the bona fides of the sale to Cornell. If he had not full knowledge of the situation of Pettit in respect to the brig, he had sufficient notice to put him upon his guard, and, if he then neglected to make proper inquiry, the law deals with his claim as if it were acquired with knowledge of the facts which reasonable inquiry would have disclosed. The Ploughboy [Case No. 11,230]; The Mars [Id. 9,106].. Cornell and Marsden stand, therefore, in the same position before the court, and the vessel must be decreed to be forfeited, so far as their rights are concerned.

A second claim is interposed on the part of Samuel Candler. He alleges that he is a judgment creditor of Pettit, and that, at the time of the seizure of the brig by the United States, she was in the lawful possession of the sheriff of the city and county of New York, under a fi. fa. issued on a judgment rendered in his favor by the supreme court of New York.

It is not necessary, in this case, to decide whether the interest in the vessel which Pettit may have acquired was a subject of seizure and sale by the sheriff on a fi. fa. For, supposing it were, that will be of no avail, if the claim of title to the brig by the United States, from the time of the commission of the offence which caused the forfeiture, be upheld; for, in that case, all title, of whatever nature, of all persons, which was not saved by the proviso, was divested out of them, and became vested in the United States. A judgment of forfeiture is necessary to effectuate the title of the government, but, when declared, it dates back, by relation, to the time of the commission of the offence, and consequently overrides all intermediate titles, however acquired. Against this general doctrine the position is taken, that where no specific mode of effectuating the forfeiture is prescribed by statute, it has no other effect than at common law, where the title to the thing forfeited does not become complete until judgment of forfeiture is pronounced by a competent court. This is no doubt the common law doctrine, and the principle, to the extent above indicated, has the support of Judge Winchester, and of Chief Justice Marshall, Mr. Justice Story and Mr. Justice Washington. U. S. v. The Anthony Mangin, 3 Cranch [7 U. S.] 356, note; U. S. v. 1,960 Bags of Coffee, 8 Cranch [12 U. S.] 398; The Mars [Case No. 9,106]. These cases suppose that relation, being a fiction of law, should not be allowed to work an injury to any one, and therefore should not override the title of an innocent purchaser intermediately acquired; that if the forfeiture, which must often be secretly incurred, be indissolubly attached to the property, so as to divest the title of a purchaser without notice, great injury would result to the commercial interests of the country; and that the mere attaching of a forfeiture as a punishment to a statute offence, does not exclude the common law doctrine of forfeiture, unless the statute distinctly so provides.

The weight of authority is, however, the other way (U. S. v. 1,960 Bags of Coffee, 8 Cranch [12 U. S.] 398; U. S. v. Grundy, 3 Cranch [7 U. S.] 338), and the distinction between forfeitures at common law and under a statute is established. The words of the statute are held to be imperative, making the forfeiture the necessary consequence of the offence, and dating its operation from the commission of the act. The same doctrine is laid down by the supreme court of this state. Fontaine v. The Phoenix Insurance Co., 11 Johns. 293; Kennedy v. Strong, 14 Johns. 128. The tenor of English adjudications is to the same effect. Roberts v. Wetherall, 1 Salk. 223; Roberts v. Withered, 5 Mod. 195; Robert v. Witherhead, 12 Mod. 92; Wilkins v. Despard, 5 Term R. 112. It has been for years the settled construction of acts of congress which declare the absolute forfeiture of property as consequent to an offence committed therewith, that a judgment of conviction shall take effect, by relation, as of the time when the forfeiture was incurred. U. S. v. 1,960 Bags of Coffee, 8 Cranch [12 U. S.] 398; U. S. v. Grundy, 3 Cranch [7 U. S.] 338. Congress has not seen fit to change or interfere with this construction. Without, therefore, speculating upon what might have been the rule most consonant with equity when the question first arose, it is the duty of this tribunal, as the subordinate court, to administer the law as it is interpreted by the supreme court, and, accordingly, whatever property Pettit acquired in this vessel by the sale to him, was, because of his alienage, divested eo instanti, and was vested in the United States by force of the statute. I shall accordingly hold that no interest of Pettit subsisted in the brig, which could be the subject of levy and arrest under the execution of the claimant, Candler.

It is further contended by the claimant, that the brig was in the custody of the law under the state process; that jurisdiction accordingly attached to the state court, to determine the legal effect of the execution and the character of the interest of Pettit; and that, to pursue the case in this court, would be to create a conflict between the judicial authorities of the state and of the United States. Under our system of federal and state governments, questions may arise

rendering inevitable a conflict of judicial powers between their respective judicatories. Each will sedulously avoid encroaching upon the jurisdiction of the other, and, if the difficulty must be encountered, it will no doubt be met in a spirit of mutual forbearance and conciliation, and neither will attempt, except in most urgent extremities, to resist or counteract the authority of the other. When the same remedy may be had by litigant parties under either jurisdiction, there can be no occasion for any collision of powers, because the subject matter, if not transferable from one court to the other, by way of error or appeal, will naturally be left to the disposal of the one first acquiring cognizance of it. Such was the case of The Robert Fulton [Case No. 11,890]. The libel in this court was by material men, to enforce a lien on the ship for materials and labor supplied her in this port. She was a domestic vessel, and the lien was one under a state statute. The vessel was held under a prior arrest for a like demand, by process from a state court. There was no ceding to the authority of the state court, but the United States court decided in effect, that, as both tribunals were administering relief by virtue of the same law, the one first having possession of the subject matter could rightfully retain it. There was, moreover, a special fitness in that case, in the forbearance of the federal court to interfere, inasmuch as, in the state tribunal, the property would be held sequestered for the common benefit of all lien creditors, whilst in admiralty the decree would have regard to no other parties than those litigant before the court. That case does not, in any aspect, supply a formula for the present one, the proceedings in the two tribunals being now diverso intuitu, not looking to a common purpose or a common method of attaining it. In the state court, the proceeding seeks to satisfy an execution in favor of a single judgment creditor, out of the vessel, as being the property of a judgment debtor. In this court, the action demands the entire proprietorship of the vessel, under a title anterior to any supposed interest of the judgment debtor in her, which title is confirmed by an act of congress. Jurisdiction over this demand belongs appropriately to the United States court, and, if a suit were brought upon it in the state court, that court, if competent to take cognizance of it, would not be bound to do so by lending its support to the enforcement of a penal law of the United States. U. S. v. Lathrop, 17 Johns. 4.

If the levy of a writ upon a vessel, under such circumstances, in a suit between individuals, could retain in a state tribunal authority to pass upon the title to the vesesl as against the government, an easy means might be afforded, not only of evading a punitive law of the United States, but also of counteracting the national polity, which exacts that ships enjoying the privileges of American bottoms shall be the property of American citizens. In the municipal tribunals, a ship might, in all respects, be dealt with as a chattel interest, in which an alien could have a right of property, and that interest might be pursued irrespective of the navigation laws; and the government, if it litigated there, might be subject to hindrance and embarrassment in enforcing the policy upon which its commercial regulations are founded.

Moreover, the proceeding in the state court could not have prevented a different party from arresting the vessel in the same or in another court, or from taking her out of the possession of the sheriff by a writ of replevin or of detinue. The title or ownership was not in contestation under the levy. A purchaser under a sale on execution takes, by force of the judgment awarding the writ, no more than the interest of the defendant in the chattel. The judgment does not assume to determine that any legal interest of the defendant exists in the chattel. In the present case, the attachment of the vessel in behalf of the United States, on the claim of a full title to her, older in inception than the supposed interest of the defendant in the execution, creates no competition of jurisdiction between the two courts. A conflict of authority would only arise, in case the court out of which the execution issued should consummate a sale under it, by ordering the vessel to be put into the possession of the purchaser. This case is in no position for such a procedure, and there is no legal impediment to the arrest and condemnation of the vessel, as demanded by this libel.

If the possession of property by a state sheriff, under a fi. fa., is to exclude the marshal from taking possession of it in execution of the laws of the United States, it might be made the means of preventing the revenue laws, including the laws against smuggling, from being enforced against vessels or their cargoes. An arrest by a sheriff, under state process, in behalf of a friendly creditor, might thus, by connivance, be made to exempt the guilty property from seizure under the process of this court. This difficulty, however, does not arise in this case. The sheriff levied the execution on the 23d of August, and, on the 31st, an informer gave notice to the custom-house that the brig had incurred a forfeiture. She was immediately seized by the United States' officers, and has since remained in their charge. The sheriff proceeded to sell the cargo, but did not attempt to sell or hold the vessel. He made no objection to her passing into the custody of the marshal, and he now interposes no claim to her possesion. It may be inferred from this, that the execution is satisfied, or that the levy under it is abandoned, leaving the brig within the sole power of this court. The claimant, by acquiescing in the seizure, by his notice to the custom house, and by putting in his claim here, is precluded from

questioning the jurisdiction of the court over the subject matter.

I shall therefore decree the condemnation of the vessel. The claim of Candler must be dismissed, with costs. The seamen and the material man are first to have their claims and costs out of the fund in court. The forfeiture does not avoid their rights.

Decree accordingly.