Nelson, Ch. J.
We agreed, on the argument, that this case must go down for a new trial because of the error in admitting reputation as competent evidence of the partnership; having previously come to the conclusion that such evidence was unsupported by any sound or analogous principles, the rule itself of most dangerous tendency in practical operation, and one which had been rather acquiesced in, as respected a few cases, than established by any settled adjudication of this court. (Halliday v. McDougall, 20 Wend. 81 ; 22 id. 264, S. C. on error.) The case was retained with a view of examining the other points raised on the trial.
The defendants proposed to prove that, subsequent to the delivery of the trees to them as carriers, and the happening of the damage, it had been ascertained by dealers, that Alpine mulberry trees were in truth of trifling value compared with the prices at which they had been sold in the market; that these had been greatly inflated and disproportioned to the intrinsic value ; that the trees were not worth cultivating for the purpose of raising the silk worm ; that they were purchased by the plaintiff to plant as a nursery, from which to sell the production ; and that the article was of no value the next year, and would not have paid the expense of cultivation. All this evidence, I am of opinion, was properly rejected, as having no legitimate bearing upon the question. The damages to which the plaintiff is entitled, if any, should afford an adequate indemnity for the loss sustained at the time the injury happened j and the admission or rejection of evidence should be regulated with a view to produce this result in the opinion of the jury. If goods are wholly lost or destroyed, the owner is entitled to their full worth at the time of such loss or destruction. In trover, the measure of damages is the value of the goods at the time and place of conversion, with *337 interest; or, perhaps, at any time between that and the trial. (Kennedy v. Strong, 14 John. Rep. 128 ; West v. Beack 3 Cowen, 82.) And, upon the same principle, if the goods are partially injured, and the party seeks redress for the qualified damage, the measure should be in like proportion. Assuming that there is no defect in the quality of the article, the fair test of its value, and consequently of the loss to the owner if it has been destroyed, is the price at the time in the market. This makes him whole, because the fund recovered enables him to go into the market and supply himself again with the goods of which he has been deprived. The objection to the evidence offered is, that it proposed to take into consideration the fluctuations of the market value long subsequent to the time when the injury happened; thereby making the measure of damages to depend upon the accidental fall of prices at some future period which might or might not occur; and if it did, the loss might or might not have fallen upon the plaintiff, as, for aught the court or jury could know, he may have parted with the property before the depreciation. It is true the counsel offered to prove that the plaintiff had purchased the trees for the purpose of planting and reproducing the article for the market the next year ; but this mere unexecuted intention, if it existed, amounted to nothing. It bound nobody; and the plaintiff had a right to change it, and to turn the property to better account if in his judgment the opportunity offered.
No doubt, if the defendants could have shown any latent defect in the particular trees that became developed at some period after the injury, by which they proved to be of an inferior value to sound and healthy ones, such as were regarded as saleable in the market, the evidence would have been proper. But this was not the effect of the offer. The proposal went to show a general depreciation of the value of the article after the injury, even in its best condition. This I am of opinion was irrelevant and impertinent, and therefore properly rejected. I admit that a mere speculating price of the article, got up by the contrivance of a few interested dealers with a view *338 to control the market for their own private ends, is not the true test. The law, in regulating the measure of damages, contemplates a range of the entire market and the average of prices as thus found, running through a reasonable period of time. Neither a sudden and transient inflation or depression of prices should control the question. These are often accidental, produced by interested and illegitimate combinations for temporary, special and selfish objects, independent of the influences of lawful commerce—a forced and violent perversion of the laws of trade, not within the contemplation of the regular dealer, and not deserving to be regarded as a proper basis upon which to determine the value, when the fact becomes material in the administration of justice.
The deposition of Cheeney, I think, ought to have been rejected, as the answer to the fifth cross-interrogatory was proper and might have been material. The fifth direct interrogatory had called for his opinion as to the value of the article in the city of New-York where it was purchased, to which he had responded ; and the corresponding cross-interrogatory enquired the price the plaintiff had paid for it. This he refused to answer, under the pretext that the transaction was confidential. Now, though the price paid by the plaintiff was not conclusive upon him, as he might have been fortunate enough to buy under the fair market value ; yet it was some evidence of that value, and might well have been taken into the account, with the other testimony. It was one of a multitude of sales that, in the aggregate, might go to determine the market value at the place where the purchase was made; and if unexplained, or made to depend upon peculiar circumstances, might be regarded as very material evidence of the fact. In Sandford v. Handy, (23 Wend. 260,) we were strongly inclined to the opinion that a misrepresentation by the vendor of the actual cost of an article was a material fact, and competent, under the circumstances, upon the question of fraud in the sale; and if so, the cost price should be regarded as material, when called out in a proper case, as ah *339 item of evidence to determine the value. If the witness had been upon the stand at the time, and had refused to answer in defiance of the authority of the court, his whole testimony must have been stricken out of the cause ; and as the same objection may be taken to the testimony returned under the commission, as if the witness were examined orally in court, it should have been rejected. The examination was imperfect, one-sided, and, in effect, ex parte. (Kissam v. Forested Wend. 651, 652, and the cases there cited.)
Bronson, J. concurred.
Cowen, J.
It was hardly contended on the argument that this verdict can be sustained. The proof of a copartnership by reputation was clearly inadmissible, and the cause must go to a new trial for that reason, if no other.
I am also of opinion that the motion should be granted for the rejection of proper evidence. This action was case, against common carriers, to recover for the loss of two boxes of Alpine mulberry trees. It was not an action by a vendor against the vendee for goods sold at an agreed price. The question, therefore, I think, stood open at the trial to all the proof which would be admissible on a quantum valebant. The market price being established, the defendants’ counsel offered to prove that this depended on an estimate entirely false, more mature observation having shown that the article was in truth of no intrinsic value. If a man will purchase such an article at an agreed price, without warranty or fraud, I readily agree that he cannot reduce the price by impeaching the article as useless ; but I am not prepared to admit the same rule as between bailor and bailee, where no price is agreed on in case of loss. A carrier is bound to receive and. convey all goods in his line for the usual rate of compensation. I do not mention this obligation as a reason why he should not pay the value of the goods; but for saying that where they happen to be accidentally lost, he, of all persons, should -be the last upon whom courts and juries *340 ought to inflict the artificial prices of the speculator; that it should rather be confined to buyers and sellers, who are the manufacturers of such prices—a work which is entirely res inter alios in relation to the carrier. But without urging any such consideration, let us consider the stronger case of buyer and seller. Take it that any article of merchandize, to all appearance of fair value, is sold for what it is reasonably worth ; f rima facie, I admit, the vendor shall recover the market price. It is shortly after discovered, however, that it is really worth little or nothing, from some secret cause unknown to the parties and believed not to exist at the time of sale. It seems to me this would be available as a defence, and, indeed, that it would be so, even on the principle conceded at the circuit. I am unable to distinguish between an offer to show that the trees were unfit for feeding silk worms, and an offer to show a total or partial worthlessness for any other cause. It was contended at the bar that the current price is the absolute standard; and I can perceive no other plausible ground on wrhich a party who never bound himself by contract to pay any specific price can be concluded. It is plausible to say, the plaintiff might have got so much for a plausible article ; that it was lost, and his chance to get that price was lost with it. This, if allowed, is an estoppel as well against the right to show one defect as another. It applies emphatically to the bubble trade of the country, in which prices are generally notorious, and easily made out by clouds of witnesses. A man takes an article in that trade to-day, and agrees to pay what it is reasonably worth to-morrow. On subsequent observation and experience, the bubble bursts, for the reason that it was really as worthless when purchased, as afterwards; yet it is contended that jurors are absolutely bound to say, and courts to adjudge, that such an article was reasonably worth the price which a universal mistake had affixed to it. Precisely the same principle would extend to a fair looking horse which no one could ride or drive, or which was secretly laboring under an incurable disease; to mulberry trees unfit to feed silk *341 worms, or fair looking slips for transplanting, which have lost the principles of vegetable life. I am unable to perceive why the damages can be reduced by showing an article worthless for one purpose, and yet not be at all affected by proving it worthless for all purposes. This latter I understand to have been proposed at the circuit. Let us look at other examples. A man assigns his patent of a new and famous invention for what it is reasonably worth, on a year’s credit. The year comes round and it turns out that the invention had been anticipated, and the patent is therefore void. So of quack medicines, which was, I believe, put on the argument as an illustration for the plaintiff. So of a note against a man reputed wealthy, who will testify that he was utterly insolvent at the time. So also of stock in a corporation whose officers will swear that it had no assets. In all these and like cases, is it right to say that the measure of value shall be the fancy price at the day 1 The case of a Raphael, sold for what it is reasonably worth, but which turns out to be the picture of an inferior artist, was put, in the argument for the plaintiff, as a crowning illustration. I think it was equally unhappy with that of the quack medicines. It seems to me that the learned counsel confounded the price to be paid by a carrier, with the case of prices agreed by a purchaser, where there is no warranty or fraud. I do not understand that, where damages are open to an estimate on the principles of a quantum valebant, the mere fictitious value is intended by the law. And I can feel no doubt that persons who happen accidentally to injure, destroy or lose such articles, are entitled to the full benefit of the principle. In trover for a promissory note, though this court held the defendant to the sum expressed by it, they admitted that the maker’s insolvency might be shown in mitigation of damages. (Ingalls v. Lord, 1 Cowen, 240.) I understand the offer, in the case before us, as made at the trial, to imply a secret defect in these trees—i. e., high anticipations were indulged in the market, that this kind of mulberry tree would be of great consequence in the silk *342 manufacture of the northern states, whereas it was a mere delusion of the moment, the trees being really a useless incumbrance to the premises of the cultivator; a failure in every sense, like peachum wood supposed to be brazilletto. And shall I be put to show, that a carrier ought not to pay as much for the loss of the counterfeit article, as for the real one 1—the same for a package of bank bills on an institution secretly bankrupt at the time, as if it were sound 1—or for counterfeit bills, because they happen to have been so well executed as to deceive the bailor and those to whom he might innocently have paid them over, as if genuine 1 With deference, it seems to me there is no end to the extravagancies of the principle.
The rule laid down in the books accords entirely with what I have endeavored to deduce from the reason of the case. In 1 Leigh?s Nisi Prius, 93, it is briefly stated as follows: “ Where the plaintiff claims a quantum valebant only, and there is no price agreed upon, it is incumbent on him to prove the value, and it is competent for the defendant to show the inferiority of the goods, and even that they were of no value.” Indeed, the rule is elementary. Blackstone says that where goods are taken without any agreement on the price, the law infers an agreement by both parties that the real value should be paid. (3 Black. Com. 163.)
I have endeavored to show that this real value implied by the law is not a fancy price—not the price raised by puffers and brokers—but the common sense value ; such as a due degree of trial and observation will justify. This answers nearly to what political economists call the natural price. (Smith’s Wealth of Nations, B. 1, ch. 7.) This writer shows, that accidental inflation or depression cannot last. It must be temporary, and generally, in a short time, be brought to the natural or central price. Now wThen the artificial price is not known to be false, the purchaser or carrier must pay it, because.he is unable to prove the truth. But when the defect is discovered—when the article is known always to have been a drug, a trick—that rule which despises .experiment, and. de *343 mands that the price should be regulated by the delusion of a by-gone monomania, would, as appears to me, but illy answer the legal requirement of real value. The consideration for a high price fails when it is found to be fictitious ; and where there has been no estoppel by agreement to pay a certain price, I am aware of no rule or case which forbids evidence of the delusion in mitigation of damages. According to the testimony and the defendants’ offer, the trees, proving valueless for the purpose of the silk culture, were worth nothing except to sell. People who deal in such articles, must, I think, in order to secure a high price, require the bailee or purchaser to stipulate for one, under the peril of being brought down to the reasonable value, on the worthlessness of their wares being detected.
The principle I have been endeavoring to contest was carried out at the trial with practical fidelity. In a set of cross-interrogatories, used on examining one of the plaintiff’s witnesses, he was asked what price the plaintiff paid for the trees? This he declined to answer. Yet the deposition was received as evidence. The witness’ excuse was : “ As all business matters are confidential with us, I do not feel at liberty here to state the price Mr. Smith paid for the trees.” The plaintiff had brought them to Troy, and had proved what such trees sold for there; and he insists that Troy was the only market which furnished the true test of his claim. The question was put as to the price which they brought in New-York. Cui bono 1 for the plaintiff is deprived of what he could obtain for them at Troy j and the use they were to be put to consisted in their excellence as an article of sale. It was, therefore, rather what the plaintiff could get, than what he gave, which went to measure the damages.
If I am right, however, as I have endeavored to show, in supposing that the real value is the measure, then the plaintiff was, by the contumacy of the witness, cut off from a test to which he was entitled. The vendor in New-York was shown to have been a dealer of experience in the Alpine mulberry ; *344 and a price agreed between him and the plaintiff would be such evidence of the real value as the defendant was entitled to lay before the jury, if he chose. It was more than the mere assertion of the New-York vendor ; for the plaintiff was a party to the price, and virtually conceded that the nett value of the trees was no more than he gave. It should have been received as high evidence that they were really worth no more at New-York. The price he gave, with the charges of transportation and other incidental expenses, would, perhaps have come much nearer the real value in Troy than the market price there. At any rate, I think the defendant had a right to the evidence for what the jury might have thought it worth. Had the answer brought out a trivial price, and the defendant been also allowed to show, as he proposed, that the trees were altogether or nearly worthless, the whole would, in my view, have presented a strong case for mitigating the damages.
I am with the defendants on all the points made by their counsel.
New trial granted.