## Case No. 7,675.

KELLY et al. v. SMITH et al.

[1 Blatchf. 290.][1]

Circuit Court, D. Connecticut. April, 1848.

PLEADING AT LAW — CONVERSION BY FACTOR — TROVER OR ASSUMPSIT—CROSS ACTION — MEASURE OF DAMAGE—BANKRUPTCY —ACTION BY ASSIGNEE—TRIAL BY JURY.

1. A factor, entrusted with goods for sale on commission, who pledges them for advances made to him, and gives the pledgee authority to sell them to reimburse himself, is guilty of a conversion of the goods at the time of their delivery in pledge, and is liable for their value at that time.

2. The legality or illegality of such a pledge does not depend upon the result.

3. Trover will lie for such a conversion; but whether indebitatus assumpsit will lie, in such case, for goods sold and delivered, quere.

4. It is clear, however, that the principal is entitled, in the settlement of accounts between him and his factor, to an adjustment of any claim he may have for loss or damage resulting from such unlawful pledge, without being driven to a cross action.

5. In the case of such a pledge, the damages to which the principal is entitled is the difference between the value of the goods at the time of the conversion and their proceeds when sold by the pledgee.

6. Under section 6 of the bankrupt act of August 19, 1841 (5 Stat. 445), a district court has jurisdiction of an action by an assignee in bankruptcy of a voluntary bankrupt, to recover a balance due from a principal to the bankrupt as factor, at the time of the presentation of his petition in bankruptcy.

7. Such a suit is essential to the winding up of the proceedings in bankruptcy, and jurisdiction in it depends upon the subject matter and not upon the parties.

8. Where, in such a suit, the defendant acquiesces in its reference to an auditor, and appears before him and contests the claim, he cannot, on a writ of error, object that in the court below the case should have been tried by a jury.

[Cited in Book v. Justice Min. Co., 58 Fed. 829.]

[In error to the district court of the United States for the district of Connecticut.]

[1] [Reported by Samuel Blatchford, Esq., and reprinted by permission.]

The action there was book debt, brought by Erastus Smith of Hartford, as assignee in bankruptcy of Henry Pomeroy, a voluntary bankrupt, and John H. Preston, who was not a bankrupt when the suit was commenced, against Norman Kelly & Co., manufacturers of printing cloths in Killingly, Conn. The plaintiffs sought to recover $2000 as due from the defendants to Preston and Pomeroy, late partners, at the time Pomeroy's petition in bankruptcy was presented. The action was reurnable to the term of the district court held in May, 1843. Both parties having appeared, an auditor was appointed by the court in March, 1845, to adjust the accounts between them. In May, 1845, the auditor made his report, finding due to the plaintiffs the sum of $1,817 27. The defendants excepted to the report, and in September, 1845, on a hearing of the exceptions, the court made a special finding as to the facts as follows: The defendants put into the hands of Preston & Pomeroy 96 bales of printing cloths under the following circumstances: Preston & Pomeroy were commission merchants in Hartford, and also made sales as such in the city of New-York. In the winter and spring of 1842, Preston & Pomeroy applied to the defendants for their business, and represented to them that they had a large capital and great facilities for disposing of cloths; that they made most of their sales in New-York; that Preston was there every week and made the sales there; and that their terms were five per cent. for commission and guaranty, with other usual charges, they advancing on the goods to nearly their value. The defendants, accordingly, consigned to them 96 bales of printing cloths, and sent them, by their directions, to Buck & Co. of New-York, agents of Preston & Pomeroy to receive and store cloths and deliver them to order when sold. In May, 1842, Preston & Pomeroy represented to the defendants that they had made arrangements to print a quantity of printing cloths for themselves, and that they would sell better in that form; and, as the sale of the defendants' cloths in their hands was dull, they proposed and recommended to the defendants to consent that they should print their 96 bales, to which the defendants consented. Thereupon, Preston & Pomeroy, on the 8th of June, 1842, before any of their acceptances became payable, delivered the 96 bales to D. H. Arnold & Co., of New-York, a commission house, upon an agreement then made between them, that the latter should take the cloths and procure them to be printed at three cents a yard, and sell them on commission, when printed, for account of Preston & Pomeroy, who should pay for the printing, and that Arnold & Co. should accept the drafts of Preston & Pomeroy to half the value of the goods. Arnold & Co. had no knowledge that the goods belonged to the defendants, but received them as the goods of Preston & Pomeroy under the above arrangement. Arnold & Co. had in their hands, at

the same time, other goods to a considerable amount, actually owned by Preston & Pomeroy, and the latter drew on Arnold & Co. against all the goods, including the 96 bales, without any discrimination. The amount of the bills drawn was $10,658 32, of which $5,-208 32 was accepted by Arnold & Co. before the 96 bales were printed, and the residue before they were sold. The contract between Preston & Pomeroy and Arnold & Co. was not communicated to the defendants, and although they knew that the goods were to be placed in the hands of some one besides Preston & Pomeroy to be printed, they did not know where they had been placed till the fall of 1842, after said drafts were all made. They then saw them at the store of Arnold & Co., but the latter did not recognize the defendants as the owners of the goods, and the defendants did not attempt to control them. The defendants had no knowledge till the fall of 1842, and after their goods were all sold, that drafts had been made against them. The bills for printing them amounted to $2,143 41 and the nett amount of sales was $5,571 97. The auditor allowed 2½ per cent. commission to Preston & Pomeroy for getting the goods printed, together with the charges of Arnold & Co. The defendants had drawn on Preston & Pomeroy against their goods, and the drafts were accepted. There was a heavy depression on printed goods after these goods were consigned by the defendants to Preston & Pomeroy and before they were sold. The difference in the actual value of the goods, between the time of the first consignment and the time of their actual sale, exceeded $1000. When sold, they were sold at their fair market value. The defendants claimed a credit for the value of the cloths on the 8th of June, 1842, which was much larger than either the actual sales by Arnold & Co., or the value at the times of such sales. The auditor disallowed this claim, and allowed only the nett sales as made by Arnold & Co. The court. on the foregoing facts, confirmed the report of the auditor, and judgment was rendered for the plaintiffs for the amount reported, with costs. The defendants then sued out a writ of error.

Isaac Toucey and Charles A. Ingersoll, for plaintiffs in error.

(1) Preston & Pomeroy should have been charged with the value of the 96 bales of goods on the 8th of June, 1842, when they were pledged to Arnold & Co. for the drafts drawn against them. They were then worth much more than they were actually sold for by Arnold & Co. (2) The district court had no jurisdiction of a suit against the defendants in favor of Preston, and Smith as assignee in bankruptcy of Pomeroy. (3) The district court had no power to appoint an auditor to try the case; it should have been tried by a jury.

Roger S. Baldwin, for defendants in error.

NELSON, Circuit Justice. 1. The question on the merits in this case is, whether the defendants below should be allowed, in the adjustment of their accounts, the nett proceeds of the actual sales of their goods, or their market value at the time of their delivery to Arnold & Co., on the 8th of June, 1842. The court below allowed only the nett proceeds.

The pledge of the goods by Preston & Pomeroy, as security for advances made to them by Arnold & Co., with authority to the latter to sell to re-imburse the same, was a conversion of the property which subjected the factors to an action for the value of the goods at the time of their delivery in pledge. Daubigny v. Duval, 5 Term R. 604; McCombie v. Davies, 7 East, 5; Fielding v. Kymer, 2 Brod. & B. 639; Graham v. Dyster, 2 Starkie, 21; Kennedy v. Strong, 14 Johns. 128. The authority given to the factors to procure the goods to be printed did not change the character of the transaction, as the pledge was not a necessary prerequisite to the exercise of that authority. Nor is it affected by the fact that the goods were sold probably as early as they could have been, had they not been pledged, that is, as soon as they could be printed. The legality of the act cannot depend upon the result. The pledge was lawful or unlawful at the time it was made. The act was a wrongful conversion, for which the factors became immediately liable to their principals.

The only difficulty in the case is in respect to the remedy. That an action of trover would lie for the value of the goods on the 8th of June, 1842, is beyond question. That is the usual mode of redress. Whether indebitatus assumpsit for goods sold and delivered would also lie is not so clear. Putnam v. Wise, 1 Hill, 234, 240, and cases in note. The case of Lee v. Shore, 1 Barn. & C. 94, seems to go that length. In that case the fact of the removal or taking away by the defendant of the goods claimed by the plaintiff, was the sole ground relied on for implying a contract of sale; and the court conceded throughout that it was sufficient. The cases generally do not carry the doctrine of election of actions to this extent. 2 Phil. Ev. 110, 111 (7th Lond. Ed.); Browne, Actions at Law, 324, 486, and cases.

But, independently of this principle, I am inclined to think that the defendants below are entitled to an adjustment of their claim, in the settlement of accounts with their factors. It is well settled that any loss which the principal may have sustained by reason of the negligence of the agent, or his departure from instructions, may be taken into account. White v. Chapman, 1 Starkie, 113; Shaw v. Arden, 9 Bing. 287, 291; 2 Smith, Lead. Cas. 14, note to Cutter v. Powell; Russ. Fact. 187. The case of Bell v. Palmer, 6 Cow. 128, was an action of assumpsit by factors against principal, to recover a balance due in account. The defendant sought

to reduce the balance, by showing a loss in the sale of the goods, by reason of a departure from instructions. He was charged, not with the price of the goods sold, but with what he might have received if he had followed the instructions. The case of Guy v. Oakley, 13 Johns. 332, involves a like principle.

Now, it appears to me that the principles referred to, and which are of daily application, cover the case in question. Whether the loss is occasioned by the negligence of the agent, or by some other wrongful act of his in dealing with the goods committed to his trust, can make no difference. In either case, it is a loss by his misconduct, in the execution of his trust, and nothing more.

That the principal, whether he be plaintiff or defendant, must, in an action of assumpsit, look to the proceeds and not to the value of the property, is answered by the case of Palmer v. Bell [supra]. There the value of the property, or, in other words, what the factors might have got for it, was allowed to the defendant in the adjustment of accounts. And the principle of that case is fully borne out by the cases referred to in Smith, Lead. Cas. and Russ. Fact.

Suppose the factor should sell the goods greatly under the market value, give them away, or appropriate them to his own use, can there be a doubt that in the adjustment of accounts he would be bound to account for their value? The pledge of the goods by the factors in this case for money advanced, was a virtual appropriation of them to their own benefit, and affords much stronger ground for implying a sale, than the fact relied on in Lee v. Shore [supra]. The principle of the cases, however, does not rest upon this implication, but upon the fact of a loss or damage arising out of the negligence or other wrongful act of the agent in dealing with the goods, which the principal is entitled to have adjusted in the settlement of accounts, without being driven to a cross action. The damage consists in the difference between the value of the goods at the time of the conversion, and the proceeds of the sale. This is the loss which, if any, the law presumes the principal to have sustained. The wrongful conversion gives him a right to their value at the time; and to that he is, in justice and equity, entitled, in the settlement of the accounts.

2. I have no doubt that the district court had jurisdiction of the case. By the sixth section of the bankrupt act of August 19, 1841 (5 Stat. 445), it has jurisdiction "in all matters and proceedings in bankruptcy arising under this act," and that jurisdiction extends "to all acts, matters and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate, &c." The jurisdiction does not depend upon the parties to the suit, but upon the subject matter. The suit in this case was essential to the winding up of the proceedings in bankruptcy, as it involved a question in respect to a portion of the assets of the estate. Without this settlement there could be no final distribution, or termination of the proceedings.

3. Assuming that the defendants were entitled to a trial by jury, a question which it is not now necessary to determine, it is a sufficient answer to the objection that the case was tried by an auditor, to say that the defendants waived their right by acquiescing in the reference to the auditor, and by appearing before him and contesting the claim. The judgment of the district court must be reversed.