Smith, J.
The principal question in this esse and the one to which the most of the testimony was directed, was this. Whether the interest of Mattie Porter (now Mrs. —■—) in the real estate which was mortgaged by her and others to The First National Bank and others, is now liable for the payment of any part of the claims intended to be secured by such mortgage under the circumstances shown by the pleadings and the evidence.
It seems to be conceded that, subject to the life estate of her mother therein, Mattie Porter was the owner in fee simple of the one undivided third of the premises mortgaged. Her brother and sister, the owner each of an undivided third, and her father and mother joined in the execution of the mortgage sued on in this case, which was given to secure claims held by sundry persons, for which claims said Mattie was in no way liable. That at the time of the execution of said mortgage she was a minor, and was in substance notified that such mortgage was not binding upon her unless she afterwards ratified it on becoming of age. That when she did become of age, her sister asked her to ratify the mortgage, but her mother objected to her doing so, and shp did not then do so by word or act, but on the contrary refused to do so. A short time after this by a *111 quit claim deed she conveyed her interest in the mortgaged property to her grand-father, James Davis, receiving from him in exchange therefor a tract of 108 acres of land, the value of .which was substantially equal to the value of Mattie Porter’s interest in the land so mortgaged by her free of the .mortgage claim, which was large, No mention of this mortgage was made in the deed to Davis, though 'he knew she had executed the mortgage when she was a minor, and that he could legally disaffirm it if she chose to do so, and he had, before the deed wa6 made to him by her, urged her not to ratify the mortgage, and offered her money if she would not.
Quite a while after she executed this deed to her grand father, this action was brought to foreclose the mortgage. An answer was filed by Mattie Porter in the case, in which she avers that “She never repudiated or disallowed her signing of said mortgage, but that she always recognized the, same as her voluntary act and deed and as a binding obligation upon her after she arrived at the age of majority.” “That said James Davis had knowledge of the fact that she had so signed said mortgage when he entered into said exchange of real estate and accepted said deed from her.” And she further alleges that her said interest in said real estate so conveyed by her was of the full and fair value of the 108 acres. ”
If by this latter averment she intended to state that her interest in the land mortgaged, subject to the lien of the mortgage as a valid one, was equal in value to the 108 acres conveyed to her by her grand-father, she'was greatly mistaken, for as before stated, we think the value of the 108 acres conveyed to her, was equal to the value of her interest in the land free of the mortgage.
It is clear also from the evidence, that up to the time she executed the deed conveying her interest in the land to her grand-father, she had not, by word ór act,ratified the mortgage executed by her during her minority, and it is equally clear that, as a legal proposition, she was at perfect liberty, as soon as she attained her majority utterly to repudiate, in some way sanctioned by the law, the mortgage before that time executed by her, and thus render it as to her *112 absolutely void and of no effect. The question in this case then is, whether the conveyance by her of the land to her grand father was, in law and in fact, a disaffirmance and repudiation of her original mortgage, so as to convey to her grantee all the title originally held by her in the property before tne execution of the mortgage, and thus put it out of her power to ratify the same, as she seems to seek to do by the answer filed by her in this suit.
It is perhaps unnecessary to discuss the question whether the mortgage executed by Mattie Porter during her minority was or was not good until ratified or repudiated, There seems to have been much controversy on this question, but in two cases, Drake v. Ramsey, 5 Ohio 152, and Crossinger v. Welch, 15 Ohio 156, the supreme court announced it to be the better law, that the deed of a minor was voidable only, and was good until disaffirmed. In the last named case the court say:
“Such being the law, the deed of an infant will hold good until some act has been done by him to avoid it, although there has been no express act of affirmance after his arrival at full age.”
But we have found that there was no act of affirmance prior to the execution of the deed to Davis. Was the execution of that deed a repudiation of the mortgage? With hesitation on my part, we have reached the conclusion that it was — and we think this conclusion is warranted by the language of the court in each of the decisions before referred to. For instance,in the 5th Ohio case, the court say:
“We believe that an entry, suit or action, a subsequent conveyance, an effort to restore parties to their original condition, or any act unequivocally manifesting the intention” — (that is to repudiate the act done during minority) “would render the avoidance effectual.” And in 15 Ohio 193, the court say:
“That a subsequent conveyance would amount to a disaffirmance has been decided in the supreme court of New York, and of the United States. 11 Johnson 541; 14 Johns., 128; and 10 Peters 59. In fact,I can not well conceive what would' be a more decisive act of disaffirmance than the conveyance of the same land to another person. It would be conclusive evidence that the person making such *113 conveyance did. not intend to be bound by his deed made in infancy. ’ ’
The doubt I entertained, was this; whether,as the deed made to Davis by Mattie Porter was only a quit claim deed, whether it might not be presumed that it was only intended as a release of her equity of redemption, and that her grantee was to take subject to the mortgage. Such was the holding in the case of Palmer v. Miller, 25 Barbour, 399. But it is to be noted that the language used by our supreme court makes no allusion to any difference in the effect of a deed with or without covenants, but seems to hold that any deed conveying the fee simple made after the minor arrives at age, disaffirms the prior voidable act of the infant. Indeed,the conveyance involved in the 15 Ohio case, was one without any covenants of seizin or warranty, and was held to disaffirm a deed made during minority. It is true in that case the former deed was not a mortgage as in this, but in the case of Tucker v. Moreland, 10 Peters 59, referred to in the 15 Ohio case, the deed executed by the minor, was a trust deed to secure a debt, and was thus in effect a mortgage, but in that case the New York supreme court held, that a subsequent conveyance, made after the grantor therein attained his majority, was a complete disaffirmance and avoidance of the prior deed,
In addition to this we are convinced from the evidence that Mattie Porter intended the deed to her grand-father as a disaffirmance of her mortgage. She was acting under the advice of her grand-father and of her mother not to affirm or validate her mortgage. She ípust have known that he was convinced that when she conveyed the property to him, he was getting her full title free of the mortgage. He paid her full value for it, as free of such lien. Having executed such a conveyance and received the full value therefor divested herself of any interest in the land, it will not do for her for some reason of her own now to come in and by answer or otherwise seek to validate the mortgage which she had before repudiated.
As to the question of the right of Mattie Porter to be subrogated to a part of the claim of the bank, we have this to say:
As we recall the evidence the bank held one of those *114 notes, secured by the mortgage, on which she was not personally liable. She had a note of $400 on some one else after the execution of her deed to her grand-father, and after she thus disaffirmed her mortgage. She gave it to her brother for collection, indorsing her name thereon, and perhaps it was to be left with the bank for collection. At all events her brother left it there for collection and the bank collected the money, and applied it to the payment in part of its note secured by the mortgage, ' It was never authorized to do this, and had no right to do it. She seeks to be subrogated to a proportionate part of said note. We think she is entitled to this relief.
Alexander Hume, for Hetterick.
Millilcin, Shotts & Millilcin, Morey, Andrews & Morey, Nelson Williams, E. A. Belden and 8. Z. Qard, for various defendants.